**CITIZENS ASSOCIATION OF GEORGE-TOWN, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

Serafim Alataris et al., Intervenors.

No. 8643.

District of Columbia Court of Appeals.

Argued Jan. 22, 1975.

Decided May 7, 1975.

———————◆———————

Christopher W. Keller, Washington, D. C., with whom W. Bruce Shirk, Washington, D. C., was on the brief, for petitioner. Courts Oulahan, Washington, D. C., also entered an appearance for petitioner.

S. Perry Jones, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the pleadings, for respondent.

Bennett M. Cooper, Washington, D. C., for intervenors.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Petitioner challenges the issuance by the District of Columbia Board of Zoning Adjustment (BZA) of a certificate of oc-

cupancy to intervenors for the operation of a restaurant and carry-out, known as Georgetown Plaza Restaurant, at 2833 M Street, N. W. Petitioner maintains that the BZA failed to consider the intensification of use occasioned by the conversion of the premises from a gas station to a restaurant, and contends that respondent should have required additional on-site parking spaces as a condition to the issuance of the certificate. We affirm.

Intervenors applied for a certificate of occupancy for a restaurant with a seating capacity of 75 persons indoors and an additional 100 persons outdoors on a terrace. The indoor area, consisting of a small one-story building, includes approximately 1,760 square feet. The outdoor terrace area, which had been most of the nonbuilding portion of the gas station, comprises approximately 3,100 square feet.

The BZA held two hearings on the matter. The first dealt with the issue of intensification of use; the second was limited to compliance with the plumbing code. The BZA's final order ruled that the plumbing code would permit a maximum seating capacity of only 100 persons (74 inside and 26 outside). As one of its findings, the BZA stated that there had been no facts introduced "regarding an increase by additions, additions of employees, gross floor area, seating capacity or other unit of measurement." That finding apparently meant that there were no facts probative of an intensification of use, as defined in § 7201.3 of the Zoning Regulations, which would necessitate providing additional parking spaces. The BZA affirmed the Zoning Committee's conclusion that no additional parking spaces were required.

Petitioner first takes issue with the BZA's finding of "no facts" as to intensification of use. Considered in its most literal sense, the finding is correct. Petitioner introduced evidence of the seating capacity of the premises as a restaurant, but understandably introduced none as to the seating capacity of the premises during its prior use as a gas station. Similarly, petitioner proffered evidence on the number of employees of the gas station, but did not deal with the number of persons needed to service up to 100 seated restaurant customers (plus those patronizing the carry-out). However, the challenged finding is not of decisional relevance. Assuming "intensification" to exist (and to have been demonstrated), the BZA's findings and conclusions would be consistent with the Zoning Regulations, and the core question would remain whether the BZA was obliged to condition the issuance of the certificate on intervenors' providing additional parking spaces. In resolving this question, definitions become critical.

■ The BZA need not require more parking spaces where an intensification is involved than would be required for the entire structure if it were constructed new.[1] Zoning Regulations § 7201.33. All newly built structures are to be provided with parking spaces to the extent specified in § 7202. Zoning Regulations § 7201.1. Thus, § 7202 in effect sets the number of spaces that the BZA may require as a prerequisite to the issuance of an occupancy certificate.[2]

■ Section 7202 contains a table which specifies the number of parking spaces required for "all *structures*". Zoning Regu-

1. "Structure" is defined as "anything constructed, including a *building*, the use of which requires permanent location on the ground, or anything attached to something having a permanent location on the ground . . . . " Zoning Regulations § 1202. We assume (without deciding) that this definition encompasses both the building and the terrace.

2. Section 7201.33 conceivably could be interpreted to imply that the BZA may require parking spaces in excess of the number mandated in § 7202. We see no basis for us to require extra spaces, nor for us to direct the BZA to so require. Additionally, it should be noted that the BZA has authority to grant exceptions to the minimum requisites of § 7202. (No request for such an exception was made.)

lations § 7201.1. Business establishments such as the Georgetown Plaza Restaurant are covered under the heading "COMMERCIAL BUILDINGS." The subheading particularly applicable to intervenors is *"Buildings* containing retail or service establishments." Since § 7202 by its terms applies to all structures, and since the generic term "structure" is defined as including but not limited to buildings, we interpret the limitation of the parking space requirement—specifically applicable to buildings—to mean that any commercial structure which does not fall within the definition of a "building" is excluded from the requirements of the regulation. This interpretation is further supported by the unit of measurement used to compute the actual number of necessary parking spaces. That criterion is "gross floor area", elsewhere defined in part in the regulations as the "sum of the gross horizontal areas of the several floors of all *buildings* on the *lot*". Zoning Regulations § 1202.

■ The issue thus narrows to whether the terrace area properly is included in the definition of a building. We conclude that it is not. A building is defined as "a *structure* having a roof supported by columns or walls for the shelter, support or enclosure of persons . . . . " *Ibid.* The terrace area at issue here is not a building, lacking its most obvious and vital components, walls and a roof. Further analysis of the differences between a terrace and a building is unnecessary.

Since the terrace area does not come within the definition of either "gross floor area" or "building", our only remaining inquiry is whether the BZA complied with the zoning regulation mandate for the building. As to the parking spaces necessary for a retail or service establishment, § 7202 provides that there is "[n]o requirement for the first 2,000 square feet of *gross floor area*". The gross floor area of the building is approximately 1,760 square feet, considerably within the exception. The BZA was correct in concluding that no additional parking spaces were required.

■ Petitioner candidly has acknowledged its dilemma, stating in its brief that "even though the use of the structure . . . has clearly *intensified within* the terms of § 7201, the Regulations do not specifically require additional parking commensurate with that intensification." That prompts a final observation. The advent of outdoor commercial facilities, most notably associated with restaurants, is a rather recent occurrence in the District of Columbia. The zoning regulations in question neither anticipated nor are readily adaptable to this change in the composition of business establishments. While petitioner would like the BZA to require additional parking spaces in a case such as this, it is not within that agency's authority to adapt the existing regulations to this type of commercial development. D.C.Code 1973, § 5–420 states: "The Board of Adjustment shall not have the power to amend any regulation or map." The sole authority for whatever amendment, if any, may be determined to be appropriate or necessary is the Zoning Commission. It is that body to which petitioner (or others with similar interests) must look for prospective relief. D.C.Code 1973, § 5–413.

Affirmed.